UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23508-Civ-COOKE/TURNOFF

MARIA BLANCO, individually, and as
plenary guardian for JOSE BLANCO,
an incapacitated person,

    Plaintiffs
vs.

CAPFORM, INC.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before me on Capform, Inc.'s ("Capform") Motion for Summary Judgment. ECF No. 85. I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided, Defendant's Motion is denied.

### I.     BACKGROUND

Maria Blanco, individually and as a plenary guardian[1] for Jose Blanco (together "Plaintiffs"), brought this action for gross negligence against Capform following an accident that occurred on a construction site in Miami, which left Jose Blanco with permanent brain damage. Second Am. Comp. ¶¶14-28. The parties agree on a limited set of facts surrounding the accident.

On October 11, 2007, Jose Blanco was injured while working at a construction site, known as the "900 Biscayne Bay project," in Miami, Florida. Def.'s Statement ¶1; Pl.'s Resp. to Def's Statement ¶1; Second Am. Comp. ¶5. At the time of injury, Jose Blanco was employed by Pavarini Construction Company ("Pavarini"), the general contractor of the 900 Biscayne Bay Project. Def.'s Statement ¶2; Pl.'s Resp. to Def's Statement; ¶2; Second Am. Comp. ¶6. Capform was a

---

[1] On January 20, 2008, Maria Blanco filed a petition to determine the incapacity and for appointment of a plenary guardian for her husband, Jose Blanco, in Miami-Dade Circuit Court, Probate Division. Jose Blanco was determined to be totally incapacitated and Maria Blanco was appointed as his plenary guardian. Second Am. Comp. ¶13.

subcontractor on the 900 Biscayne Bay Project and performed concrete foam work.  Def.'s Statement ¶4; Pl.'s Resp. to Def's Statement ¶4.  In the moments leading up to the accident, two Capform employees proceeded to remove a large piece of metal, known as a "taper tie," by means of a blow torch.  Def.'s Statement ¶10; Pl.'s Resp. to Def's Statement ¶10.  Once dislodged, the taper tie fell from the fourteenth floor of the 900 Biscayne Bay Project while Jose Blanco was sweeping the ground of the street on the west side of the construction project.  Def.'s Statement ¶3; Pl.'s Resp. to Def's Statement ¶3.  The taper tie ricocheted off the 13th floor and struck Jose Blanco in the head.  *Id.*  At the time of the injury, Capform had taped off an area directly below the overhead work being done on the fourteenth floor to prevent people from walking in the zone.[2]  Def.'s Statement ¶5; Pl.'s Statement ¶5; Second Am. Comp. ¶10.  The outer area was approximately 24 feet from the 900 Biscayne Bay Building.  Def.'s Statement ¶7; Pl.'s Resp. to Def.'s Statement ¶7.  Jose Blanco was outside the taped area and was struck approximately 45 feet from the Norwest corner of the building.  Def.'s Statement ¶7; Pl.'s Resp. to Def.'s Statement ¶7.  The Capform employees failed to tie off the taper tie, as they were supposed to, prior to commencing their task of removing it, and if they had tied off the taper tie, it probably would not have fallen off the parking garage and stricken Jose Blanco.  Def.'s Statement ¶11; Pl.'s Resp. to Def.'s Statement ¶7.  The Capform employees used torches, even though Capform had a policy prohibiting the use of these torches and Capform provided no hot work training to its employees.  Def.'s Statement ¶12; Pl.'s Resp. to Def.'s Statement ¶12.  There was no safety net in place to catch the taper tie and prevent it from falling down off the fourteenth floor of the 900 Biscayne Bay Project.  Def.'s Statement ¶13; Pl.'s Resp. to Def.'s Statement ¶13.  The street where Jose Blanco was struck was not closed down.

---

[2] The parties disagree on whether the tapped area was a control access zone ("CAZ") and whether the area met the OSHA standards.  Def.'s Statement §§5-6; Pl.'s Resp. to Def's Statement §§5-6.

Def.'s Statement ¶17; Pl.'s Resp. to Def.'s Statement ¶17.[3]

On September 27, 2011, Plaintiffs filed a Complaint against Capform alleging that Capform's gross negligence caused the accident and seeking damages for Jose and Maria Blanco. Comp. ¶¶14-28, ECF No. 1.  On September 17, 2012, Plaintiff moved for a summary judgment as to both counts of the Complaint alleging that the circumstances surrounding the accident and injury to Jose Blanco spell out a case of simple negligence insufficient to vitiate Capform's worker's compensation immunity pursuant to Florida Statute §440.10.  Def.'s Mot. for Summ. J., ECF No. 85.  Plaintiffs filed a Response and Capform filed a Reply.  ECF No. 108, 119.

## II. LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

"The moving party bears the initial burden to show the district court . . . that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.*  Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When the non-moving party bears the burden of persuasion at trial, the party moving for summary judgment may satisfy Rule 56's burden of production by either (i) submitting "affirmative

---

[3] Plaintiff has presented evidence that there was a working platform on the 14th floor below the taper tie, but that the platform had been stripped of its safety devices, a wind screen, handrails, wood floor, and toe boards before the accident.  Pl.'s Resp. to Def.'s Statement ¶14; Perrin's Dep. 108:14-109:23.

evidence that negates an essential element of the nonmoving party's claim," or (ii) demonstrating to the court that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id*.

### III. ANALYSIS

In their Complaint, Plaintiffs allege that Capform, based on its knowledge of prior incidents, as well as Capform's own decision to lessen the standard safety controls at the 900 Biscayne Bay Project, condoned, ratified, and consented to the grossly negligent conduct of its employees and agent, thus causing the catastrophic injuries of Jose Blanco. Second Am. Comp. ¶¶23-24. Capform brought this motion for summary judgment arguing that Plaintiffs' claims are barred by the exclusivity provisions of the Florida's Workers' Compensation Act ("FWCA") because Capform's conduct did not rise to the level of gross negligence. Def.'s Mot. Summ. J. 1-3.

The FWCA states in pertinent part:

> (e) A subcontractor providing services in conjunction with a contractor on the same project or contract work is not liable for the payment of compensation to the employees of another subcontractor or the contractor on such contract work and is protected by the exclusiveness-of-liability provisions of s. 440.11 from any action at law or in admiralty on account of injury to an employee of another subcontractor, or of the contractor, provided that:
> 1. The subcontractor has secured workers' compensation insurance for its employees or the contractor has secured such insurance on behalf of the subcontractor and its employees in accordance with paragraph (b); and
> 2. The subcontractor's own *gross negligence* was not the major contributing cause of the injury.

§440.10(1)(e), Fla. Stat. (2012) (emphasis added).

The Supreme Court of Florida has defined "gross negligence" as "an act or omission that a reasonable, prudent person would know is likely to result in injury to another." *Travelers Indem.*

4

*Co. v. PCR Inc.*, 889 So. 2d 779, 793 n. 17 (Fla. 2004); *see also Greathouse v. Ceco Concrete Const., L.L.C.*, 5:06CV2RSAK, 2007 WL 624550, at *3-4 (N.D. Fla. Feb. 23, 2007) *aff'd*, *Greathouse v. Ceco Concrete Const. LLC*, 232 F. App'x 957 (11th Cir. 2007) (applying the Supreme Court of Florida's definition of gross negligence to Florida Statute §440.10(1)(e)). The Eleventh Circuit held that "[t]o hold a party liable for gross negligence, the district court must find that the defendant had knowledge of the existence of circumstances which constitutes a 'clear and present danger' and yet still undertakes 'a conscious, voluntary act or omission . . . which is likely to result in injury.'" *Cent. State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F. 3d 1373, 1377 (11th Cir. 2000); *see also Greathouse*, 20 Fla. L. Weekly Fed. D 530 (N.D. Fla. Feb. 23, 2007) *aff'd*, *Greathouse v. Ceco Concrete Const. LLC*, 232 F. App'x 957 (11th Cir. 2007) (applying Eleventh Circuit's definition of gross negligence to Florida Statute §440.10(1)(e)).

  Here, Capform has failed to show that there are no genuine issues of material fact as to whether Capform's conduct amounted to gross negligence. First and foremost, the parties dispute whether Capform or a reasonably prudent person would have known that the taper tie could fall outside of the tapped area. Capform presented evidence showing that "[i]t was expected that if falling objects fell off the 900 Biscayne Bay Building, they would fall into the [Control Access Zone ("CAZ")], although it can possibly happen." Def.'s Statement ¶18; Tyree Dep. 97:7-97:14; Elvas Dep. 47:20-48:5. Plaintiffs, on the other hand, presented testimony supporting the proposition that falling debris is a known danger in the construction industry and that it is foreseeable that that items cut next to a building and allowed to fall on the ground may ricochet and fall outside of a CAZ. Landon Dep. 188:18-189:24.

  Plaintiffs also argue that Capform was aware of 13 incidents of falling debris injuring individuals and property inside and outside of the CAZs at the 900 Biscayne Bay Project. Pls.' Resp. to Def.'s Statement ¶9. Capform does not contest that there were incidents of falling debris,

5

but contests the fact that there were incidents involving taper ties or incidents where a falling debris ricocheted off the building and flew outside a CAZ to injure someone in the street. Def.'s Reply 7.

The parties also disagree on whether the area taped off constituted a CAZ in compliance with the OSHA standards and whether the size of the taped area was deficient. *See* Gomez 39:23-40:23; *but see*; Landon Dep. 42:6-42:12; Wolfe Dep. 245:10-245:25.

Further, Plaintiffs have presented evidence that: (1) prior to the accident, Capform had removed safety devices, *i.e.* the table underneath the 14th floor, which, along with its safety devices, *i.e.* a wind screen, handrails, wood floor, and toe boards, were designed to prevent falling debris; (2) Capform had no spotter on the ground to prevent people from being struck by falling debris; (3) Capform employees had no hot work permit nor the training required to use the torch to cut the taper tie with torch; (4) Capform employees failed to tie off the cut end of the taper tie to prevent it from falling to the ground. Landon Dep. 60:2-61:4; Pavarini Investigation Report 33. Based on this evidence, the question of whether Capform was grossly negligent should be presented to the jury.

Accordingly, many issues as to material facts in this case will need to be determined by the fact-finder, and thus preclude a determination as a matter of law that Capform's conduct did not rise to the level of gross negligence.

## IV. CONCLUSION

Accordingly, it is **ORDERED and AJUDGED** that Capform's Motion for Summary Judgment (ECF No. 85) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 7th day of January 2013.

_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*